UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY O., Individually and as Guardian Ad Litem of S.O., a minor,<br><br>     Plaintiffs,<br><br> v.<br><br>TAYLOR'S CROSSING PUBLIC CHARTER SCHOOL,<br><br>     Defendant. | Case No. 4:12-cv-00193-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Kelly O., on behalf of her 16-year-old disabled son S.O.,[1] instituted this action against Taylor's Crossing Public Charter School ("Taylor's Crossing") under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794. Plaintiff alleges that Taylor's Crossing violated Section 504 by "deliberately and repeatedly fail[ing] to provide S.O. with educational programs and related aids and services . . . designed to meet his individual education needs" as a disabled student at the school. (*Pl.'s Compl.* at ¶ 38, Dkt.

---

[1] In the initial Complaint, S.O.'s mother asserted claims on her own behalf. The parties, however, stipulated to the dismissal of Kelly O.'s individual claims. (Dkt. 53.) The stipulation was approved by the Court on May 6, 2013. (Dkt. 55.) The stipulation does not affect Kelly O.'s claims brought as Guardian Ad Litem on behalf of her son.

**MEMORANDUM DECISION AND ORDER - 1**

1.) Plaintiff also alleges that Taylor's Crossing violated Section 504 by unilaterally disenrolling S.O. after he accrued numerous absences due to his disability. According to Plaintiff, the school's actions violated S.O.'s federally protected rights and deprived S.O. of meaningful access to a public education. (*Id.* at ¶ 44.) Based on these allegations, Plaintiff seeks "special and general damages to be proven at trial," an award of fees and costs, and "other equitable and legal relief that is warranted and just." (*Id.* at 10.)

Pending before the Court is Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and motion for summary judgment under Fed. R. Civ. P. 56(a). (Dkt. 29.) Taylor's Crossing argues that Plaintiff's complaint should be dismissed for six reasons: (1) Plaintiff failed to set forth sufficient facts in her complaint to support a claim under Section 504; (2) Plaintiff failed to exhaust administrative remedies; (3) Plaintiff's claims are barred by the applicable statute of limitations; (4) Taylor's Crossing provided S.O. with access to a free and appropriate public education; (5) S.O. was disenrolled for a legitimate non-discriminatory reason; and (6) Plaintiff has not presented proof of any damages compensable under Section 504. (Dkt. 29 at 2.)

The parties presented oral arguments on Defendant's motions on May 29, 2013. During the hearing the Court ordered the parties to submit supplemental briefing on the exhaustion issue. Both parties submitted their supplemental briefing on June 12, 2013. Having fully considered the parties' arguments on Defendant's motions and the record in this matter, and for the reasons explained below, the Court finds that Plaintiff failed to exhaust the applicable administrative remedies under the Individuals with Disabilities

**MEMORANDUM DECISION AND ORDER - 2**

Education Act ("IDEA"), 20 U.S.C. § 1415(l), and that the failure to exhaust requires dismissal of Plaintiff's complaint without prejudice. Based on this conclusion, Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) will be granted and Defendant's motion for summary judgment will be denied as moot.

## BACKGROUND

In August of 2008, Kelly O. and John K. (collectively referred to as S.O.'s parents), enrolled S.O. as a 7th grade student at Taylor's Crossing, a public charter school established in 2005 and located in Idaho Falls, Idaho. S.O. suffers from an unknown illness that causes extreme fatigue and interferes with his ability to attend school on a regular basis. (*Letter from Dr. Gerald Bader*, Dkt. 32-1.) Prior to his enrollment at Taylor's Crossing, S.O. received special education pursuant to an Individual Education Plan ("IEP") under the IDEA. Taylor's Crossing does not dispute that S.O. suffers from a disability.

At the time of S.O.'s enrollment, Laurie Jackson (the Special Education Director of Taylor's Crossing) requested and received from S.O.'s parents the IEP and expired eligibility report completed for S.O. by his previous school. Although Taylor's Crossing considered S.O. to be disabled, the school did not evaluate S.O. prior to his initial placement and no IEP meetings were held.

During his first semester at Taylor's Crossing, S.O.'s 7th grade teacher provided S.O. with extra time to complete assignments and allowed him more time on tests than other students. He did not, however, receive special education under the IDEA.

**MEMORANDUM DECISION AND ORDER - 3**

According to S.O.'s parents, they inquired several times as to when S.O. would be assessed for special education. These requests went unanswered and Taylor's Crossing never formally assessed S.O. for special education. During the first half of the 2008-2009 school year, S.O. attended class at Taylor's Crossing but often arrived to school late due to health issues. Near the end of the 2008 calendar year, S.O.'s attendance became more sporadic and he frequently was absent due to his deteriorating health.

Both of S.O.'s parents are educators and, at the time, John K. (S.O.'s stepfather) was employed by Taylor's Crossing as an administrator. In December of 2008, Gail Harding-Thomas (the Superintendent of Taylor's Crossing) attended a holiday dinner party at S.O.'s parents' home. According to Plaintiff, during the party, Superintendent Harding-Thomas observed S.O. and, after talking with Kelly O. and John K. about their son's medical condition, concluded that S.O. would be better served in a homebound program. Plaintiff offered to provide Ms. Harding-Thomas with any medical documentation the school might need to support the change of placement, but Ms. Harding-Thomas stated that it was not necessary.

In January of 2009, S.O. ceased attending class at Taylor's Crossing and began the homebound program. The program entailed weekly assignment binders (provided by S.O.'s 7th grade teacher) which were completed by S.O. at home and then taken to the school by his parents, where the binders were graded and returned to S.O. the following week. This process continued through the Spring semester and S.O. received full credit for the 7th grade.

**MEMORANDUM DECISION AND ORDER - 4**

Pursuant to Taylor's Crossing's policy regarding school placement and automatic enrollment of current students, S.O. was enrolled in the 8th grade and continued in the homebound program. During the 2009-2010 school year, S.O.'s parents were not asked to provide medical documentation supporting S.O.'s need for the homebound program and S.O. was not evaluated by the school for special education.

In April of 2010, Myrna Guthrie (an interim administrator at Taylor's Crossing) began reviewing materials on truancy at the school and the school's attendance reports. This led to a truancy investigation regarding S.O. During the investigation, Ms. Guthrie found that S.O. had accrued 60 unexcused absences during his 7th grade year. Through school records, Ms. Guthrie was aware that S.O. received credit from Taylor's Crossing for his work in the second half of his 7th grade year and his 8th grade year up through March of 2009. However, because S.O. was never *officially* placed in the homebound education program, the school retroactively treated the absences as unexcused.

Under Taylor's Crossing's policies, there are requirements that parents be given written notification of a student's fifth, eighth, and tenth absences. The notice of the tenth absence requires notice of the loss of credit and rights to due process. No notices were given to S.O.'s parents regarding S.O.'s unexcused absences.

On May 7, 2010, S.O.'s parents received a letter advising them that, due to attendance concerns, S.O. was being "administratively withdrawn" from Taylor's Crossing. S.O.'s parents claim that they made numerous attempts to resolve the attendance issue, but the attempts were unsuccessful and they were told by acting

**MEMORANDUM DECISION AND ORDER - 5**

superintendent Alan Dopp that "we don't want that kind of kid (referring to S.O.) at Taylor's Crossing Public Charter School." (*Pl.'s Statement of Facts in Opp. Of Taylor's Crossing's Mot. To Dismiss and for Summ. J.* at 11, Dkt. 39.)

On May 10, 2010, Taylor's Crossing unilaterally disenrolled S.O. from the school. On the same date, Ms. Guthrie contacted the Bonneville County Sheriff's Department concerning S.O.'s truancy. On May 12, 2010, an officer from the Bonneville County Sheriff's Department went to S.O.'s residence in response to the truancy report filed by Taylor's Crossing. S.O. was out of town that day for medical reasons. On May 24, 2010, S.O.'s parents provided the officer with a letter verifying his medical condition. No further action was taken by the County.

Afer S.O. was disenrolled on May 10, 2010, his mother contacted Taylor's Crossing to discuss a grievance with the school under Section 504. The school refused to speak with her. She next attempted to contact the district official listed on school's policy charged with handling civil rights grievances. The information on Taylor's Crossing policy directed her to contact a person within the Boise School District, whom she contacted and was informed that she had contacted the wrong person. According to Plaintiff, the reason the wrong person was listed on the policy was due to the fact that Taylor's Crossing adopted most of its district policies verbatim from the Boise School District. Even minor changes—like the adoption dates on the policies and the copyright mark at the bottom of the pages—were not made to the polices when they were adopted

**MEMORANDUM DECISION AND ORDER - 6**

by Taylor's Crossing.[2]

S.O.'s parents made several further attempts to resolve their dispute with Taylor's Crossing, which included several meetings with school officials, but those attempts did not bear fruit. S.O. was home-schooled by his parents beginning in the fall of 2010 and he was enrolled in the Bonneville School District's Virtual Academy in January of 2011.

In October of 2011, Plaintiff filed a Formal Complaint with the Idaho State Department of Education. The Formal Complaint was couched in terms of Section 504, but the State Department of Education conducted a limited investigation under the rubric of the IDEA.[3] The investigation was limited due to the fact that S.O.'s disenrollment occurred a little more than one year before the complaint was filed and therefore fell outside the one-year statute of limitations for such claims. *See* 34 C.F.R. § 300.153(c). The only issue determined to be before the State Department of Education was whether Taylor's Crossing violated the IDEA by denying S.O.'s parents' request to re-enroll S.O. at Taylor's Crossing following his disenrollment. As to that issue, the State Department of Education found that Taylor's Crossing did not violate the IDEA or its implementing regulations. The State Department of Education did not address whether the school's

---

[2] As one example, Plaintiff points out that Taylor's Crossing's attendance policy indicates it was adopted in 1997, which would have been impossible because Taylor's Crossing did not come into existence until 2005.

[3] This is consistent with the Idaho Special Education Manual, which indicates that formal complaints filed with the State Department of Education will be investigated under the IDEA.

**MEMORANDUM DECISION AND ORDER - 7**

unilateral disenrollment of S.O. violated the IDEA.

Chapter 13 of the Idaho Special Education manual discusses dispute resolution under the IDEA. It sets forth the procedures for resolving complaints under the IDEA and delineates between Formal Complaints (which are filed with the State Department of Education and are subject to a one-year statute of limitations) and Due Process Hearing requests (which are filed with the school district and are subject to a two-year statute of limitations). The Special Education Manual contains forms both for the filing of Formal Complaints and requesting a Due Process Hearing. The manual also indicates that parties must exhaust their administrative remedies under the IDEA before filing a civil action under other federal laws (including Section 504), but the manual is not clear on what administrative remedies must be exhausted. Section 6 of the manual, entitled Appeals and Civil Action, states in relevant part that:

> Either party shall exhaust all dispute resolution procedures available under the IDEA 2004 prior to filing action in civil court. However, nothing in the IDEA 2004 restricts or limits the rights, procedures, and remedies available under the U.S. Constitution, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or other Federal laws protecting the rights of children with disabilities. This means either party may have remedies available under these laws that overlap with the IDEA 2004. To obtain relief under those other laws, either party shall first use the available dispute resolution procedures under the IDEA 2004 before going directly into court.

(*Idaho Special Education Manual, Chp. 13, Sec. 6*, Dkt. 48-1 at 20.)

**MEMORANDUM DECISION AND ORDER - 8**

It is undisputed that S.O.'s parents did not request a due process hearing under the IDEA.

Kelly O. filed a complaint in federal court on behalf of her son on April 17, 2012. The complaint alleges that the actions taken by Taylor's Crossing violated Section 504 of the Rehabilitation Act.

## DISCUSSION

As indicated above, Taylor's Crossing seeks the dismissal of Plaintiff's complaint on several grounds. As a procedural matter, Taylor's Crossing argues that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b) for failing to exhaust administrative remedies. Taylor's Crossing also raises several substantive arguments, seeking summary judgment under Fed. R. Civ. P. 56(a). Because the Court concludes that Plaintiff's complaint must be dismissed under Rule 12(b) for failing to exhaust administrative remedies, the Court's discussion will be limited to that issue. Defendant's substantive arguments under Rule 56(a) will be denied as moot.

## 1.    Exhaustion

Taylor's Crossing argues that Plaintiff failed to exhaust administrative remedies under the IDEA prior to filing suit and that the failure to exhaust under the IDEA warrants dismissal of Plaintiff's claims under Section 504 of the Rehabilitation Act. At first glance, this argument appears misplaced given the fact that Plaintiff's complaint does not raise any claims under the IDEA. However, having reviewed the applicable authorities, and for the reasons set forth below, the Court finds that Plaintiff's failure to

**MEMORANDUM DECISION AND ORDER - 9**

exhaust under the IDEA warrants dismissal without prejudice.

In enacting the IDEA, Congress recognized that the statute represents one part of an overarching federal statutory scheme protecting the rights of disabled school children. In recognition of this legal landscape, Congress provided in the IDEA that, before a party may file a civil action raising claims under the IDEA, Section 1983, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, or other laws protecting the rights of children with disabilities, the litigant must first exhaust the administrative remedies required under the IDEA. *See* 20 U.S.C. § 1415(l). The IDEA's exhaustion provision states the following:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action under such laws seeking relief that is also available under th[e] [IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under th[e] [IDEA].*

20 U.S.C. § 1415(l) (emphasis added).

In *Payne v. Peninsula School District*, 653 F.3d 863 (9th Cir. 2011), the United States Court of Appeals for the Ninth Circuit, sitting en banc, clarified the nature of the exhaustion provision contained in the IDEA. Addressing a split of authority among the federal circuit courts, the Ninth Circuit first clarified that the exhaustion requirement contained in the IDEA is not a prerequisite to the exercise of federal subject matter

jurisdiction over claims brought by a disabled student under Section 504 of the
Rehabilitation Act. *Payne*, 653 F.3d at 867. As a claims processing provision, however,
the court held that the failure to exhaust may be raised as a non-jurisdictional affirmative
defense. *Id*. Here, although Taylor's Crossing characterized the issue as a jurisdictional
matter in its initial briefing, exhaustion is clearly raised as an affirmative defense in the
school's Answer to Plaintiff's Complaint.[4] (Dkt. 4 at 8.)

The Court of Appeals went on to address the issue of *when* the failure to exhaust
under the IDEA operates as a bar to claims under Section 1983, the ADA, and the
Rehabilitation Act. Prior to the en banc decision in *Payne*, the Ninth Circuit followed an
"injury-centered" approach, "holding that exhaustion can only be avoided if the plaintiff
has alleged *injuries* that cannot be redressed to any degree by the IDEA's administrative
procedures and remedies." *Payne*, 653 at F.3d at 874 (emphasis added) (internal quotation
marks omitted). In *Payne*, the Ninth Circuit rejected the injury-centered approach, and
adopted a "relief-centered" approach. *Id*. at 874-75. Under the relief-centered approach,
the court held that, "when determining whether the IDEA requires a plaintiff to exhaust,
courts should start by looking at a complaint's prayer for relief and determine whether the
relief sought is also available under the IDEA." *Id*. at 875. If the requested relief is
available under the IDEA, exhaustion is required. *Id*.

---

[4] Taylor's Crossing acknowledged in its Reply brief that the failure to exhaust is
no longer considered a jurisdictional bar in the Ninth Circuit. (*Reply Mem. In Support of
Def.'s Mot. To Dismiss and For Summ. J.*, at 2 n.1, Dkt. 52.)

**MEMORANDUM DECISION AND ORDER - 11**

The court identified three situations where § 1415(l) requires exhaustion. *Id*. First, the court stated that "exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent." *Id*. As an example, the court stated that, "if a disabled student files suit under the ADA and challenges the school district's failure to accommodate his special needs and seeks damages for the costs of a private school education, the IDEA requires exhaustion regardless of whether such a remedy is available under the ADA, or whether the IDEA is mentioned in the prayer for relief." *Id*. Second, exhaustion is required "in cases where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student." *Id*. Third, exhaustion is required "where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education ["FAPE"], whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE)." *Id*.

The Ninth Circuit made several additional comments that are instructive here. The court upheld its previous holding that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages," which are not available under the IDEA. *Id*. at 877 (quoting *Robb v. Bethel School Dist. No. 403*, 308 F.3d 1047, 1050 (9th Cir. 2002)). In other words, "plaintiffs cannot avoid exhaustion through artful pleading." *Id*. "If the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling–relief available under the IDEA–then the IDEA

**MEMORANDUM DECISION AND ORDER - 12**

requires exhaustion." *Id*. The court explained that, "[i]n such a case, the plaintiffs are seeking the same relief, even if they are willing to accept cash in lieu of services in kind." *Id*. In sum, "to the extent that a request for money damages functions as a substitute for relief under the IDEA, a plaintiff cannot escape the exhaustion requirement simply by limiting her prayer for relief to such damages." *Id*.

Turning to the analysis in this case, Plaintiff's prayer for relief asks the Court to "[e]nter judgment in favor of Plaintiffs and against Taylor's Crossing Public Charter School in an amount of special and general damages to be proven at trial." (Dkt. 1 at 10.) If that statement was all that was before the Court, it might not be sufficient to conclusively find that the relief sought by Plaintiff in this case is also available under the IDEA. As the Ninth Circuit explained in *Payne*, "especially in the context of motions to dismiss," "it is [not] proper for courts to assume that money damages will be directed toward forms of relief that would be available under the IDEA." *Payne*, 653 F.3d at 877.

The court in *Payne*, however, also held that the district courts are not limited solely to the pleadings when conducting the exhaustion analysis. *See id.*, at 881-82. "Generally, in deciding an unenumerated motion to dismiss, the court may look beyond the pleadings to decide disputed issues of fact." *Cayla R. v. Morgan Hill Unified School Dist.*, 2012 WL 1038664 at * 4 (N.D. Cal. 2012) (quoting *Payne*). Here, the Court has the benefit of Plaintiff's discovery responses, which Taylor's Crossing has attached to its motion.

Plaintiff provided Taylor's Crossing a computation of her alleged damages in response to discovery requests and as required by Fed. R. Civ. P. 26(a)(1)(A). Plaintiff's

MEMORANDUM DECISION AND ORDER - 13

computation of damages indicates that Plaintiff is seeking $276,810 in damages, which is the cost of services Plaintiff contends should have been provided to S.O. over a three-year period. (Dkt. 32-15 at 5.) Plaintiff's computation of damages is further broken down and lists the services that were not provided. For instance, Plaintiff seeks $23,662 per year for an one-on-one aide. (*Id*.) Plaintiff seeks $9,898 per year for the cost of a special education teacher. (*Id*.) Plaintiff seeks $2,850 per year for speech therapy, $7,204 per year for physical therapy, and $3,602 per year for occupational therapy, all of which Plaintiff alleges should have been provided as special educational services by Taylor's Crossing to S.O. (*Id*.) Plaintiff's computation of damages also includes costs for a psychologist, physical education, counseling, transportation, summer school, and assistive technology. (*Id*.)

Plaintiff's computation of damages makes it clear that the relief sought requires exhaustion under the IDEA before a suit may be brought under Section 504. Indeed, the Ninth Circuit expressly stated in *Payne* that, "[i]f the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling–relief available under the IDEA–then the IDEA requires exhaustion." *Payne*, 653 F.3d at 871.

In response to the school's exhaustion defense, Plaintiff raises two arguments. First, that she did exhaust by filing a formal complaint with the Idaho State Department of Education. Second, Plaintiff argues that, even if she did not technically exhaust her claims under the IDEA, her failure to exhaust should be excused because to do so would have been futile or inadequate.

**MEMORANDUM DECISION AND ORDER - 14**

As to Plaintiff's first argument, the Court can see how a parent of a child with a disability, or a school (or a court for that matter) could become confused when navigating the federal laws applicable to children with disabilities. To those uninitiated into the arena of special education law, the IDEA itself can be overwhelming—the statute consists of nearly 100 sections and the annotated version of the statute takes up approximately 750 pages of the United States Code. Throw in two additional federal statutes—Section 504 of the Rehabilitation Act and the Americans with Disabilities Act—and two sets of implementing regulations applicable to Section 504 and the IDEA, and it comes as no surprise that Plaintiff was uncertain of how to proceed or that the Idaho Special Education Manual is less than clear on the topic of exhaustion.

Notwithstanding the complicated nature of this area of the law, the applicable authorities are quite clear on the particular matter presently before the Court—to bring a judicial action under Section 504 related to the identification, evaluation, or placement of a child with a disability, or contending that a school failed to provide a child with a free appropriate public education, the party bringing the action must first exhaust administrative remedies under § 1415(l) of the IDEA. And exhaustion under § 1415(l) requires the party to raise her claims in a due process hearing. *See* 20 U.S.C. § 1415(l) ("the procedures under subsections (f) [which sets forth the procedures for an impartial due process hearing] and (g) [which sets forth the procedures for appealing an adverse decision in the due process hearing] shall be exhausted to the same extent as would be required had the action been brought under th[e] [IDEA].").

**MEMORANDUM DECISION AND ORDER - 15**

Similarly, several federal courts have held that filing a formal complaint with a state level educational agency, as was done in this case, does not satisfy the exhaustion requirement.  *See e.g.*, *Tyler B. v. San Antonio Elementary Sch. Dist.*, 253 F. Supp. 2d 1111, 1118 (N.D. Cal. 2003) ("The initiation of a state level review which did not proceed to a due process hearing is not literal exhaustion or its equivalent."); *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1099 (1st Cir. 1989) (holding that plaintiff who failed to pursue a due process hearing but filed a formal complaint under the regulations did not exhaust administrative remedies); *Avoletta v. City of Torrington*, 2008 WL 905882 at * 6 (D. Conn. 2008) (holding that a plaintiff who sought administrative relief under Section 504 did not exhaust under the IDEA: "[i]t is the exhaustion of the IDEA's administrative procedures, not procedures under Section 504, that is the prerequisite for bringing an action in federal or state court alleging the denial of a FAPE under the IDEA, Section 504, the ADA, Section 1983, or any other cause of action.").

Plaintiff's second argument—that exhaustion should be excused in this case—is similarly unavailing. Plaintiff accurately points out that the Ninth Circuit has recognized exceptions to the exhaustion requirement under the IDEA. *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298 (9th Cir. 1992). According to the Ninth Circuit, "parents need not exhaust the procedures set forth in 20 U.S.C. § 1415 where resort to the administrative process would be either futile or inadequate." *Id*. at 1303. "The futility exception derives from the language of the IDEA itself, which limits the exhaustion requirement to cases where the plaintiff 'seek[s] relief that is also available' under the IDEA." *Kutasi v. Las*

**MEMORANDUM DECISION AND ORDER - 16**

*Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007) (quoting 20 U.S.C. § 1415(l)). "If the plaintiff seeks a remedy for an injury that could not be redressed by the IDEA's administrative procedures, then the claim falls outside § 1415(l)'s rubric and exhaustion is unnecessary." *Id*. Plaintiff bears the burden of demonstrating an exception to the exhaustion requirement. *See Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir. 2000). For the reasons set forth below, the Court finds that Plaintiff has failed to carry this burden.

In her supplemental briefing, Plaintiff argues that exhaustion would have been both futile and inadequate in this case because, "[w]hile students protected by the IDEA are subject to its provisions, including § 1415(l), the same is not true for students whom the IDEA does not reach – specifically students who are eligible for services under Section 504/ADA." (Dkt. 56 at 9.) The first part of the above assertion is correct—"If the plaintiff seeks a remedy for an injury that could not be redressed by the IDEA's administrative procedures, then the claim falls outside § 1415(l)'s rubric and exhaustion is unnecessary." *Kutasi*, 494 F.3d at 1168. The second part of the assertion—that IDEA does not reach students who are eligible for services under Section 504 or the ADA—is incorrect as a matter of law.

The IDEA and Section 504 are not mutually exclusive. The hypothetical scenarios under which a child with a disability will satisfy the eligibility criteria under both the statutes are numerous. And while a student may certainly meet the eligibility criteria under Section 504 and not be eligible for specialized instruction under the IDEA, the question is not whether a parent is asserting claims under one or both statutes, but

**MEMORANDUM DECISION AND ORDER - 17**

whether the claims being asserted relate to identification, evaluation, or educational placement of a child with a disability. In this case, that question is apparent on the face of Plaintiff's complaint. The heart of Plaintiff's complaint is that Taylor's Crossing unilaterally disenrolled S.O. because of his disability. That claim is directly related to educational placement. *See R.B. v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 758 n.75 (E.D. Pa. 2010) ("the unilateral disenrollment of a special education student is a change in placement [under the IDEA]."). Indeed, the United States Supreme Court recognized that "one of the evils Congress sought to remedy [by enacting the predecessor statute to the IDEA] was the unilateral exclusion of disabled children by schools." *Honig v. Doe*, 484 U.S. 305, 327 (1988). If the Court were to accept Plaintiff's futility argument, parents would be able to avoid the exhaustion requirement simply by framing their claims in terms of Section 504 rather than the IDEA. Such an argument is not supported by the statutory language or case law.[5]

Based on the above discussion, the Court finds that Plaintiff failed to exhaust administrative remedies under § 1415(l) of the IDEA and that Plaintiff has failed to demonstrate that an exception applies in this case. Plaintiff's complaint will therefore be dismissed without prejudice.

---

[5] For the same reasons discussed in the main text, the Court finds that Plaintiff's remedies in a due process hearing would not have been inadequate. Plaintiff could have directly challenged the school's disenrollment and sought compensatory education relief.

2.      **Dismissal Without Prejudice**

The dismissal of an action on the ground of failure to exhaust administrative

remedies is not on the merits. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

"Unlike a judgment on the merits, a plaintiff's failure to exhaust administrative remedies

should result in a dismissal without prejudice." *Payne*, 653 F.3d at 881. Such an outcome

is supported by the purposes of the IDEA's exhaustion requirement, which "allows for the

exercise of discretion and educational expertise by state and local agencies, affords full

exploration of technical educational issues, furthers development of a complete factual

record, and promotes judicial efficiency by giving these agencies the first opportunity to

correct shortcomings in their educational programs for disabled children." *Hoeft*, 967

F.2d at 1303.

The record in this case strongly suggests that Taylor's Crossing, at the very least,

failed to comply with the procedural requirements of the IDEA concerning the school's

interactions with S.O. and his parents. Any argument that S.O. was not entitled to the

procedural protections of the IDEA because he had not yet been deemed a "child with a

disability" by Taylor's Crossing has been foreclosed by the Ninth Circuit's holding in

*Hacienda La Puente Unified School District of Los Angeles v. Honig*, 976 F.2d 487 (9th

Cir. 1992) (holding that child suspected to have disability was entitled to IDEA's

procedural protections prior to determination that the student at issue was a "child with a

disability"). Of course, Taylor's Crossing will not be able to rectify any shortcomings in

its educational programs for disabled children once this case is dismissed if Plaintiff's

**MEMORANDUM DECISION AND ORDER - 19**

claims are barred by the statute of limitations at the administrative level.

During the hearing on Defendant's motion, the Court inquired as to the parties' understanding of whether S.O. and his mother would be barred by the statute of limitations from exhausting their administrative remedies. Counsel for Plaintiff indicated that Kelly O. would be barred by the statute of limitations from exhausting her claims and that Plaintiff would therefore be left without a remedy. The Court disagrees with this assessment, and because Plaintiff will have the opportunity to exhaust her administrative remedies following the dismissal of this case, the Court will take the time to explain why it disagrees with Plaintiff's assessment.

Unlike the statute of limitations for filing formal complaints with the State Department of Education—which, as the parties know, is one year—due process hearings are subject to a two-year statute of limitations. Under the IDEA, a parent is required to request an impartial due process hearing "within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). Here, Kelly O. was not aware that Taylor's Crossing was holding S.O.'s absences against him (which the school informally approved through the homebound program) until May 12, 2010, when an officer from the Bonneville County Sheriff's Office came to her residence indicating that the school was reporting S.O. as truant. If that were the end of the analysis, counsel would be correct that Plaintiff would be statutorily barred from raising her claims in a due process hearing. Fortunately for Plaintiff, that is not the end of the analysis.

**MEMORANDUM DECISION AND ORDER - 20**

The statute provides for exceptions to the two-year timeline: "The timeline described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to . . . (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent." 20 U.S.C. § 1415(f)(3)(D)(ii). As discussed above, the IDEA is quite complicated. In recognition of this fact, the statute requires Local Educational Agencies—in this case, Taylor's Crossing—to provide notice to parents of their rights under the statute in certain situations. Under § 1415(b)(3)(A), when a school initiates a change concerning the identification, evaluation, or educational placement of a child, the school is required to provide written prior notice to the parents of the child in accordance with subsection (c)(1). As mentioned above, the school's unilateral disenrollment was a "change in placement," which under the above provision triggered the school's obligation to provide written notice. Under § 1415(c)(1)(C), the written notice is required to include, *inter alia*, "a statement that the parents of a child with a disability have protection under the procedural safeguards of th[e] [IDEA.]" Similarly, under § 1415(d), "[t]he procedural safeguards notice shall include a full explanation of the procedural safeguards . . . written in an easily understandable manner . . . relating to . . . (I) due process hearings." 20 U.S.C. § 1415(d)(2)(A) - (L).

One of S.O.'s parents' major concerns in this case was that they did not know how to proceed and the school provided them with no guidance. The school was obligated under the above provisions to provide S.O.'s parents notice of their rights. Similarly,

**MEMORANDUM DECISION AND ORDER - 21**

taking Plaintiff's alleged facts as true, the school's obligation to provide written notice was triggered on multiple occassions during the time S.O. was enrolled at Taylor's Crossing. There is nothing in the record suggesting that Taylor's Crossing provided S.O.'s parents with the requisite notice. Indeed, the record indicates that the only notice of procedural safeguards given to S.O.'s parents came not from Taylor's Crossing but from the State Department of Education after S.O.'s parents filed their formal complaint. The notice provided by the State Department of Education was given to S.O.'s parents in November of 2011.

Because Taylor's Crossing, as the local educational agency, withheld information from S.O.'s parents that was required to be provided under the IDEA, the two-year statute of limitations should not act as a bar to Kelly O. from exhausting her administrative claims once this case is dismissed. 20 U.S.C. § 1415(f)(3)(D)(ii).

While the Court recognizes that its conclusion on this issue may not be considered binding on the local or state educational agencies once this case is dismissed, it is clear from the record before the Court that S.O.'s parents have not had the opportunity to challenge Taylor's Crossing's unilateral disenrollment of S.O. through administrative proceedings or otherwise. Under the statutory provisions cited above, because the school failed to provide S.O.'s parents with notice on how to present such claims, they should not now be time barred from doing so.

In an email correspondence between employees of the State Department of Education submitted by Plaintiff in opposition to Defendant's motion to dismiss, one of

**MEMORANDUM DECISION AND ORDER - 22**

the Department employees states that "we discussed long and hard about the probability that Taylor's Crossing would have been in deep doo-doo had the statute of limitations not run out." (Dkt. 48-2 at 10.) The email exchange on January 11, 2012, goes on to say that, "this kid [referring to S.O.] transferred in with an IEP which was not reviewed for nearly two years, and after which the administration dis-enrolled the student for truancy, although they'd been providing homework to him as 'homebound.'" (*Id.*)

Taylor's Crossing may not be out of the "deep doo-doo" just yet.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

Defendant's Motion to Dismiss and for Summary Judgment, (Dkt. 29), is **GRANTED in part and DENIED in part**. Defendant's motion is granted as it pertains to Plaintiff's failure to exhaust administrative remedies under 20 U.S.C. § 1415(l) and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.



DATED: August 21, 2013

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**